IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-CV-02316-NYW

THE COLORADO RIVER ECOSYSTEM
a/n/f DEEP GREEN RESISTANCE,
THE SOUTHWEST COALITION,
DEANNA MEYER,
JENNIFER MURNAN,
FRED GIBSON,
SUSAN HYATT, and
WILL FALK,

    Plaintiffs,

v.

STATE OF COLORADO,

    Defendant.

## DEFENDANT STATE OF COLORADO'S MOTION TO DISMISS

COMES NOW Defendant State of Colorado, by and through the Colorado Attorney General, and files its Motion to Dismiss Plaintiff's Complaint for Declaratory Relief for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

The Complaint requests this Court to declare that the ecosystem is a "person" capable of possessing rights. Furthermore, it asks the Court to declare that self-appointed representatives of the ecosystem should be allowed to sue the State of Colorado in order to protect those rights. Yet, the Complaint fails to establish this Court's jurisdiction to hear the case, and even if it did, the Complaint further fails to state a claim upon which relief can be granted.

The Court is without jurisdiction for four reasons. First, the Complaint fails to overcome the State's sovereign immunity under the Eleventh Amendment of the Constitution. Second, the Complaint fails to prove constitutional standing under Article III of the U.S. Constitution. The Complaint alleges hypothetical future injuries that are neither fairly traceable to actions of the State of Colorado, nor redressable by a declaration that the ecosystem is a "person" capable of possessing rights. Third, the Complaint fails to demonstrate jurisdiction under any other federal statute. Diversity jurisdiction does not exist because the Complaint names the State of Colorado as Defendant. And none of the other federal statutes cited in the Complaint establish federal court jurisdiction in the absence of an actual case or controversy under Article III. Fourth, the Complaint presents a non-justiciable issue of public policy. Whether the ecosystem should have the same rights as people, and who should be allowed to assert those rights in federal courts, are matters reserved to Congress by the Constitution.

Even if the Complaint could establish this Court's jurisdiction, it further fails to state a claim upon which relief can be granted because it fails to demonstrate statutory standing under any federal statute. In short, the Complaint fails to satisfy the basic procedural requirements to justify a lawsuit and the Complaint and all its counts should be dismissed.

## ARGUMENT

### I. The Complaint is Barred by the Eleventh Amendment.

The Complaint must be dismissed as its claims are precluded by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment bars suits in federal courts against non-consenting states by the state's own citizens and by citizens of another state.[1] *Port Auth. Trans-Hudson Copr. v. Feeney,* 495 U.S. 299, 304 (1990).

The immunity afforded by the Eleventh Amendment "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.,* 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Accordingly, absent an unmistakable waiver by the State of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suits in federal courts for states and their

---

[1] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State... ." U.S. CONST. amend. XI.

agencies. *Ramirez v. Oklahoma Department of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994). Congress may abrogate the states' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute. *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989). Conversely, a general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 56 (1996). The party invoking the federal court's jurisdiction bears the burden of proof. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

In the Complaint, Plaintiff names only the State of Colorado as a Defendant. To maintain its claims, Plaintiff must demonstrate that the State either voluntarily waived its sovereign immunity, or that Congress acted to affirmatively waive the State's immunity. A review of the Complaint makes it clear that Plaintiff can do neither, and this lawsuit must be dismissed with prejudice.

First, the Complaint generally alleges federal question, diversity, and civil rights jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1343, respectively. However, none of those statutes abrogate the State's immunity and none contain the "unmistakably clear" language necessary to abrogate the State's immunity. *See Dellmuth*, 491 at 228; *Blatchford v. Native Vill. of Noatak & Circle Vill.,* 501 U.S. 775, 786, (1991) (noting that "no one contends that § 1331 suffices to abrogate immunity for all federal questions."); U.S. CONST. amend. XI (judicial power does

not extend to suits brought "*by Citizens of another State*" against one of the United States, thus preserving immunity where diversity between parties might exist under § 1332); *Salazar v. Heckler,* 787 F.2d 527, 528 (10th Cir. 1986) (§ 1343 vests district courts with original jurisdiction for civil rights violations but does not itself abrogate immunity).

Second, Plaintiff's action is not saved by the fact that it seeks declaratory judgment and injunctive relief, as the Eleventh Amendment expressly applies to suits seeking declaratory and injunctive relief. *See Cory v. White,* 457 U.S. 85, 90-91(1982). Nor can Plaintiff's case against the state defendants be maintained pursuant to the exception recognized in *Ex parte Young,* 209 U.S. 123 (1908), as that exception applies only to official capacity suits against state *officials* and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993); accord *Higganbotham v. Okla. Transp. Com'n,* 328 F.3d 638,644 (10th Cir.2003); *see also Hunt v. Colorado Dep't of Corrections,* 271 F. App'x 778, 780-81 (10th Cir. March 28, 2008).[2]

Third, the strictures of the Eleventh Amendment cannot be overcome by Plaintiff's implied allegations under various federal environmental statutes. For

---

[2] The Complaint also alleges jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, as well as Fed. R. Civ. P 57. However, because none of these statutes or rules unmistakably abrogate the State's sovereign immunity, they do not confer jurisdiction over Plaintiff's claims. *Dellmuth,* 491 at 228.

instance, the Complaint alleges that dams are the leading cause of population collapse of endangered fish species potentially raising claims under the Endangered Species Act ("ESA"). *See* Dkt. 1 at ¶81. Although the ESA permits citizen suits, like many federal environmental statutes, it limits such suits "to the extent permitted by the eleventh amendment to the Constitution." *See* 16 U.S.C. § 1540(g). Accordingly, the ESA does not unequivocally abrogate sovereign immunity; it preserves it. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir. 1999) (holding citizen suit provisions containing identical limitation to preserve immunity).[3]

Ultimately, no federal law or rule cited by Plaintiff abrogates the State's sovereign immunity, nor has the State voluntarily invoked the Court's jurisdiction. In fact, the State has done the opposite by asserting its sovereign immunity as a bar to this litigation. Because Plaintiff's Complaint fails to overcome the "immunity from suit" established under the Eleventh Amendment, the Complaint must be dismissed.

---

[3] Plaintiff also failed to obey the notice provisions of the ESA, which bar commencement of a citizen suit without notice. 16 U.S.C. 1540(g)(2)(A). Because no notice was provided to the State in this case, Plaintiff's hypothetical ESA claims would be barred even if the Eleventh Amendment did not apply. *See Forest Guardians v. U.S. Bureau of Reclamation,* 462 F. Supp. 2d 1177, 1183-1184 (D.N.M. 2006).

## II.   The ecosystem and next friends lack standing.

Even if the Complaint were not barred by the Eleventh Amendment, the Complaint fails to demonstrate that the ecosystem or "next friends" have standing.

Standing involves two distinct inquiries. First, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). Article III constitutional standing requires three elements: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and the court lacks jurisdiction. *Steel Co.*, 523 U.S. at 101. In that event, the suit must be dismissed under Rule 12(b)(1). *See Id*. at 109–10.

Second, if a plaintiff has suffered sufficient injury to satisfy Article III, then a federal court must ask whether a statute has conferred "standing" on that plaintiff. *Warth v. Seldin,* 422 U.S. 490, 500, (1975). Statutory standing exists when a

particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit. Even if a plaintiff satisfies the requirement of Article III, that plaintiff cannot state a claim upon which relief can be granted if Congress has not granted statutory standing. See *Steel Co.*, 523 U.S. at 97. Under those circumstances, plaintiff's claims should be dismissed under Rule 12(b)(6), which serves as a "judgment on the merits." See *Angel v. Bullington*, 330 U.S. 183 (1947).

### A. The ecosystem lacks the standing required to invoke this Court's jurisdiction.

In this case, the Complaint fails to establish any one of the three elements of constitutional standing.

First, the Complaint admits there is no legally protected interest at issue. It admits the "Colorado [River] has no rights or standing whatsoever to defend itself and ensure its existence." Dkt. 1 at ¶ 41. Even putting aside the Complaint's admission, it further fails to allege an actual or imminent concrete injury. Instead, it speculates that hypothetical or potential injury might occur in the future. *See e.g.* Dkt. 1 at ¶ 69 ("Actions taken by Defendant State of Colorado […] *may* violate those rights.") (emphasis added); Dkt. 1 at ¶ 85(d) ("[C]ertain activities […] *may* violate the rights of the natural communities …") (emphasis added); Dkt. 1 at ¶ 82 ("The Plaintiffs are asking this Court to declare these and other actions […] *capable* of violating the rights of the [ecosystem]." (emphasis added). But even then, the Complaint fails to allege *when* those potential injuries might occur. Speculative

injuries resulting from potential future actions are not imminent or actual and are insufficient to defeat a motion to dismiss.

Second, the Complaint fails to show that those speculative future injuries could be fairly traced to any action of the State. Standing cannot be based on "injury that results from the independent action of some third party not before the court." *Maryland v. Louisiana*, 451 U.S. 725, 736 (1981); *see also Lujan*, 504 U.S. at 562. None of the alleged potential future injuries listed in the Complaint is fairly traceable to the State of Colorado. For example, Count Three complains of the recent breach of the Gold King Mine, Dkt. 1 at ¶¶ 70 – 73, yet the breach was not caused by the State. In fact, the Environmental Protection Agency ("EPA") has claimed responsibility for the Gold King Mine spill,[4] and the Supreme Court of the United States denied New Mexico's attempt to sue the State over the breach. *New Mexico v. Colorado*, 137 S. Ct. 2319 (2017).

Likewise, any injury that might result in the future from alleged "over-allotment" of water from the Colorado River cannot be fairly traceable to the State. *Contra.* Dkt. 1 at ¶ 74 (alleging that "[o]ne reason the Colorado River rarely reaches the sea is the compacts and laws that regulate how much water can be diverted from the river allow humans to take more water from the river than physically

---

[4] See https://www.epa.gov/goldkingmine, last visited: October 3, 2017. ("EPA takes responsibility for the Gold King Mine release and is committed to continue working hand-in-hand with the impacted local governments, states and tribes.")

exists."). A conclusory statement about the allocation of the waters of the river fails to link injury, if any, to State actions. Allocation of waters of the river has occurred over ninety-five years pursuant to two interstate compacts, an international treaty, statutes, and related court decrees, authorities-referred to as the "Law of the River."[5] The "Law of the River" implicates Colorado along with six other states; the Republic of Mexico; multiple Native American Tribes; the federal government; and water user, power and environmental groups throughout the southwestern United States. The State is in compliance with the interstate water compacts and related Law of the River and the Complaint cannot allege injury resulting from any violation thereof. To the extent the Complaint alleges injury resulting from speculative deficiencies in the Law of the River, such injuries are not fairly traceable to actions of the State. Similarly, whatever speculative injury might hypothetically occur in the future from operation of the dams listed in the Complaint is not fairly traceable to actions of the State. Although the dams are located in Colorado, none is owned or operated by the State. Dkt. 1 at ¶ 79.[6]

Third, the Complaint fails to demonstrate that potential future injuries are redressable by the requested relief. In order to establish standing under Article III,

---

[5] *See* https://www.usbr.gov/lc/region/g1000/lawofrvr.html. Last visited October 8, 2017.

[6] See *e.g. https://www.usbr.gov/projects/facilities.php?state=Colorado* last visited October 6, 2017; http://www.northernwater.org/WaterProjects/WaterCollection.aspx last visited October 6, 2017.

"it must be likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). The Complaint fails that test. The Complaint alleges hypothetical future injuries, but asks this Court to declare that the ecosystem "is a 'person' capable of possessing rights…." Dkt. 1 at ¶60. There is no suggestion—even a speculative one—that declaring the ecosystem a "person" would redress the alleged injuries. Thus, the Complaint fails to demonstrate redressability.

### B. The ecosystem does not have statutory standing and cannot state a claim for relief.

Even if the claims were not barred by sovereign immunity and the Complaint could meet the burden of Article III standing, the ecosystem itself does not have statutory standing to bring such claims. Because the ecosystem lacks statutory standing, the Complaint fails to state a claim upon which relief can be granted. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (holding that aquatic mammals do not have statutory standing to sue absent express authorization by Congress). Whether to grant standing to animals or ecosystems is a question for Congress and not the courts. *Id.* at 1179.

The Complaint fails to directly cite any statute conferring standing on the ecosystem. As noted above, the Complaint merely implies that violations might occur under ESA. Dkt. 1 at ¶81 (alleging dams are the leading cause of population collapses of endangered fish species). Setting aside Plaintiff's failure to allege an

injury in fact, the ESA does not authorize suits by an ecosystem: the ESA allows a "person," to sue in federal district court to enforce the duties the statute prescribes. *See* 16 U.S.C. § 1532(13). The term "person" includes "an individual, corporation, partnership, trust, association, or another private entity; or any officer, employee, agent, department, or instrumentality of the Federal Government, or any State, municipality, or political subdivision of a State, or of any foreign government; any State, municipality, or political subdivision of a State; or any other entity subject to the jurisdiction of the United States." *Id*. "Person" does not, however, include animals and thus does not grant standing to animals to sue in their own names to protect themselves. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (holding "[t]here is no hint in the definition of "person" … that the "person" authorized to bring suit to protect an endangered or threatened species can be an animal that is itself endangered or threatened."). Similarly, there is no hint that "person" includes inanimate objects, like the soil, water, and plants that, together with animals, create an ecosystem.

Nor does the ecosystem have statutory standing under the Law of the River. The Complaint alleges that the Colorado River rarely reaches the sea because interstate compacts have over-allocated its supplies. Dkt. 1 at ¶74. The ecosystem cannot challenge those interstate compacts in this litigation. Interstate compacts do not confer statutory standing on the ecosystem. Disputes over injuries arising under interstate compacts are generally reserved to the states, "each acting as a

quasi-sovereign and representative of the interests and rights of her people in a controversy with the other." *See Wyoming v. Colorado*, 286 U.S. 494, 508-09 (1932); *also* 28 U.S.C. §1251(a) (reserving interstate water disputes to the "original and exclusive jurisdiction" of the Supreme Court.). Because no environmental statute or other law authorizes the ecosystem to bring a suit on its own behalf, the Complaint should be dismissed under Rule 12(b)(6).

### D. The "next friends" are not parties and lack standing on their own or as third-parties.

As "next friends," Deep Green Resistance ("DGR") (no address provided), Southwest Coalition (no address provided) and the named members are not parties to the case. *See e.g., Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990) (A "next friend" does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest); *Morgan v. Potter*, 157 U.S. 195, 198 (1895) (It is the named plaintiff, and not the next friend, who is the real and proper party). The "next friends," therefore, have no role in establishing jurisdiction in this case.

Even if the "next friends" were plaintiffs, they do not have standing, either on their own or to assert the rights of another third party. "Next friends" do not have standing on their own because, as explained above, the Complaint fails to demonstrate an injury in fact. The Complaint is devoid of facts establishing that "next friends" have suffered any cognizable injury. Moreover, as also explained

above, the alleged injuries are hypothetical and neither traceable to any action of the State, nor redressable by a declaration that the ecosystem is a person.

Because the "next friends" lack standing in their own right, they also lack standing as third parties to assert the rights of the ecosystem (assuming *arguendo* the ecosystem has rights to defend). Although courts have recognized very limited instances in which "it is necessary to grant a third party standing to assert the rights of another," the third party must first establish its own standing under Article III. *See Kowalski v. Tesmer*, 543 U.S. 125, 129, (2004) ("[W]e shall assume the attorneys have satisfied Article III and address the alternative threshold question whether they have standing to raise the rights of others."). The lack of Article III standing forecloses the ability of the "next friends" to credibly demonstrate standing on behalf of the Plaintiff in this case.

### III. No Other Federal Statutes Establish Jurisdiction.

In addition to federal question jurisdiction under §1331, which does not exist for the reasons above, the Complaint alleges the Court has jurisdiction under §§1332, 1343, 2201, and 2202. None, however, establishes the jurisdiction of this Court.

Diversity jurisdiction under § 1332 does not exist. Section 1332 grants federal courts original jurisdiction for of all civil actions where the matter in controversy exceeds $75,000 and is between "citizens of different States." 28 U.S.C. §1332. Yet, a state is not a 'citizen' for purposes of diversity jurisdiction. *See Moor*

14

*v. Alameda Cty.*, 411 U.S. 693 (1973) (holding "[t]here is no question that a State is not a 'citizen' for purposes of […] diversity jurisdiction."). Therefore, the Complaint fails to establish diversity jurisdiction.

Jurisdiction also does not exist under § 1343. Section 1343 does not itself confer jurisdiction. *Diehl v. Vill. of Antwerp*, 964 F. Supp. 646, 649 (N.D.N.Y.), aff'd, 131 F.3d 130 (2d Cir. 1997). Instead, it provides federal jurisdiction only for specific, enumerated, complaints of civil rights violations. *See e.g.* §1343(a) (providing federal jurisdiction "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."). To invoke § 1343 the complaint must also invoke the corresponding statute that provides for the protection of plaintiffs' civil rights. *Diehl*, 964 F. Supp. at 649. It must also specify the civil rights at issue. *Id*. The Complaint fails this test. It neither invokes a civil rights statute, nor identifies any civil right of the ecosystem that it alleges has been violated.

Similarly, jurisdiction does not exist under the Declaratory Judgment Act, 28 U.S.C. §§2201—2202. The Declaratory Judgment Act does not establish jurisdiction in the absence of an actual case or controversy. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 138 (2007) (holding "[t]he Declaratory Judgment Act did not (and could not) alter the constitutional definition of 'case or controversy' or relax Article III's command that an actual case or controversy exist before federal courts may adjudicate a question."). Because the Complaint fails to demonstrate an actual case

or controversy, as explained above, this Court cannot adjudicate the case under the Declaratory Judgment Act.

## IV. The Plaintiff Raises a Non-Justiciable Issue.

Even if Plaintiff could overcome the State's immunity from suit or the lack of constitutional or statutory standing, Plaintiff's claims are precluded because the Complaint raises a non-justiciable political question. The Complaint requests this Court to make sweeping declarations that would fashion new law out of whole cloth. It asks the Court, rather than Congress or the Executive Branch, to declare that the ecosystem is a "person" whose rights—whatever they might be—can be defended in court by self-declared representatives. Such a declaration has the potential to alter the fabric of American domestic and foreign policy.

Justiciability is an issue of subject-matter jurisdiction, and a court has an independent obligation to evaluate its ability to hear a case before reaching the merits. *Hamilton v. Pallozzi*, 848 F.3d 614, 619 (4th Cir. 2017). Courts are without jurisdiction to hear political questions. *Baker v. Carr*, 369 U.S. 186, 198 (1962). A political question exists where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department or a lack of judicially discoverable and manageable standards for resolving it. *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 132 (2012).

The responsibility for making laws to define the ecosystem as a person with rights clearly rests with Congress. U.S. Const. Art II; *see Cetacean Cmty. v. Bush*,

16

386 F.3d 1169, 1175 (9th Cir. 2004) ("If Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly.") (citations omitted); *Polish Nat. Alliance of U.S. v. N.L.R.B.,* 322 U.S. 643 (1944) (holding that great power was thus given to the Congress: the power of legislation and thereby the power of passing judgment upon the needs of a complex society).

Contrary to the Complaint's assertion, *Citizens United v. Federal Election Commission* does not provide an instructive analogy in this case. The holding there relied upon other cases considering whether restricting the speech of associations and corporations infringes on individual members' rights of association under the 14th Amendment. 558 U.S. 310, 365 (2010). The Court, thus, interpreted existing rights of individual members and considered whether restricting the rights of associations and corporations would infringe those existing rights. That is not the case here, where the Complaint asks this Court to declare new rights on behalf of the ecosystem.

## CONCLUSION

For the reasons stated above, the Complaint and all its counts should be dismissed under Rules 12(b)(1) and 12(b)(6).

Respectfully submitted on this 17th day of October, 2017.

          CYNTHIA H. COFFMAN
          Attorney General

          FREDERICK R. YARGER
          Solicitor General

          */s/ Scott Steinbrecher*
          Karen Kwon
          First Assistant Attorney General
          Scott Steinbrecher*
          Senior Assistant Attorney General
          Lain Leoniak*
          Assistant Attorney General
          Ralph L. Carr Colorado Judicial Center
          1300 Broadway, 7th Floor
          Denver, Colorado 80203
          Tel: (720) 508-6000, Fax: (720) 508-6039
          Karen.kwon@coag.gov
          Scott.steinbrecher@coag.gov
          Lain.leoniak@coag.gov

          *Counsel for Defendant State of Colorado*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2017, I electronically filed the foregoing DEFENDANT STATE OF COLORADO'S MOTION TO DISMISS using the court's CM/ECF system, which will send notifications of such filing to all counsel of record.