**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-CV-02316-NYW

THE COLORADO RIVER ECOSYSTEM
a/n/f DEEP GREEN RESISTANCE,
THE SOUTHWEST COALITION,
DEANNA MEYER,
JENNIFER MURNAN,
FRED GIBSON,
SUSAN HYATT, and
WILL FALK,
OWEN LAMMERS, individually as the Living Rivers Executive Director,
and JOHN WEISHEIT, individually as the "Colorado Riverkeeper"

      Plaintiffs,

v.

STATE OF COLORADO,
JOHN W. HICKENLOOPER,
in his official capacity as
Governor of the State of Colorado

      Defendant.

---

### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

---

COME NOW Defendants State of Colorado and John W. Hickenlooper, in his

official capacity as Governor of the State of Colorado (the "State"), by and through

the Colorado Attorney General, and file their Motion to Dismiss Amended

Complaint.

1

## INTRODUCTION

The Amended Complaint requests this Court declare that the ecosystem is a "person" capable of possessing rights.  In doing so, it asks the Court to transfer sovereign authority over the State's public natural resources and bestow control on a handful of "next friends."  The Amended Complaint, however, is not based in law. Rather, its arguments are based in rhetoric that fails to establish this Court's jurisdiction or to present a valid legal argument to support its claims.  As such, the Amended Complaint should be dismissed.

The Court is without jurisdiction to hear the case for four reasons.  First, the Amended Complaint is barred by the State's Eleventh Amendment immunity. Second, the Amended Complaint fails to prove constitutional standing under Article III.  The Amended Complaint alleges hypothetical future injuries that are neither fairly traceable to actions of the State, nor redressable by a declaration that the ecosystem is a "person" capable of possessing rights.  Third, the Amended Complaint fails to demonstrate jurisdiction under any other federal statute in the absence of an actual case or controversy under Article III.  Fourth, the Amended Complaint presents a non-justiciable issue of public policy.  Whether the ecosystem should have the same rights as people, and who should be allowed to assert those rights in federal courts, are matters reserved to Congress by the Constitution.

Even if the Amended Complaint could establish this Court's jurisdiction, it further fails to state a claim upon which relief can be granted because it fails to

demonstrate statutory standing under any federal statute.  In short, the Amended

Complaint fails to satisfy the basic legal requirements to justify a lawsuit and the

Amended Complaint and all its counts should be dismissed.

## ARGUMENT

### I.     The Amended Complaint is Barred by the Eleventh Amendment.

The Amended Complaint is precluded by the Eleventh Amendment.  The

Eleventh Amendment bars suits in federal courts against non-consenting states by

the state's own citizens and by citizens of another state.[1]  *Port Auth. Trans-Hudson

Corp. v. Feeney,* 495 U.S. 299, 304 (1990).  Eleventh Amendment immunity is "a bar

to the exercise of federal subject matter jurisdiction."  *Fent v. Okla. Water Res. Bd.,*

235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).

Contrary to assertions in the Amended Complaint, simply naming the

Governor in his official capacity as the executive of the State does not avoid the

State's sovereign immunity.  The named officer must "have some connection with

the enforcement of the act, or else it is merely making him a party as a

representative of the state, and thereby attempting to make the state a party." *Ex

parte Young,* 209 U.S. 123, 157 (1908).  The named official "must have a particular

duty to enforce the statute alleged to be unlawful and a demonstrated willingness to

---

[1] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State… ."  U.S. CONST. amend. XI.

exercise that duty." *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 828 (10th Cir. 2007). It is insufficient to merely allege that a Governor, as the executive of a State, is charged generally with execution of all its laws. *Ex parte Young*, 209 U.S. at 192; *contra* Dkt. 19 at p. 16. To hold otherwise, "would be to adhere to an empty formalism and to undermine the principle […] that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 262 (1997).

When an action seeks to invade the sovereign interests of the State, the real party in interest is the State, regardless of whose name appears in the caption. *Id.* at 287 (Finding *Ex parte Young* exception inapplicable where successful complaint would affect Idaho's sovereign interest in its lands and waters."). The very purpose of the Eleventh Amendment is to protect sovereign state interests from such attacks attempting to wrest the control of state activities from the state itself. *Id.* at 268; *also Abbey v. Rowland*, 359 F. Supp. 2d 94, 101 (D. Conn. 2005).

The Amended Complaint fails not only to demonstrate the Governor has a particular duty to enforce a statute, but it also fails to allege which state statute it claims is unconstitutional. Instead, it decries generally Defendants' refusal "to recognize the rights of the Colorado River Ecosystem" by "refusing to recognize [its] right to appear in Court." Dkt. 19 at p. 24. Yet, opposing litigation cannot, in itself, create an exception to sovereign immunity against suit, or the exception would swallow the rule.

4

In this case, the State is the real party in interest because the Amended Complaint seeks to eliminate State sovereignty. The State has a sovereign interest in all the earth, air, and water within its domain. *State of Ga. v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907); *Missouri v. Illinois*, 180 U.S. 208, 242 (1901). The State's sovereign control over water resources within its borders is confirmed by its laws. *See Kansas v. Colorado*, 206 U.S. 46, 95 (1907) ("[w]hen Colorado [was] admitted into the Union [it was] admitted with the full powers of local sovereignty which belonged to other states … and Colorado, by its legislation, has recognized the right of appropriating the flowing waters to the purposes of irrigation."). Colorado's Constitution declares the water of natural streams are the property of the public and dedicated to the use of the people of the State. Colo. Const. art. XVI, § 5. The rights of use "contained in Colorado's constitution are reserved to the people." *Cent. Colorado Water Conservancy Dist. v. Colorado River Water Conservation Dist.*, 186 Colo. 193, 196, 526 P.2d 302, 304 (1974). Over the last century, the Colorado General Assembly has developed one of nation's most comprehensive statutory schemes to administer the use of this important public resource. *See e.g.* C.R.S. §37-90-101 *et seq*. (Underground Water); §37-92-101 *et seq*. (Water Right Determination and Administration).

The Amended Complaint asks the Court to wrest control from the State and bestow it on the next friends. The Amended Complaint asks the Court to declare that the rights of the ecosystem "establish duties on behalf of the State of

Colorado…to respect those rights," and to declare that the State's regulation and administration may violate those rights.  Dkt. 19 at p. 28.  It seeks to enjoin the State's regulation and administration of land and water resources and to bestow this power on a small group of self-appointed next friends.  Dkt. 19 at p. 26, 24 ("The Colorado River Ecosystem may defend and enforce its rights through "next friends," or guardians, who are acting on its behalf and in its best interests.").  Because the Amended Complaint seeks to shift the State's sovereign powers to these "next friends," it is barred under the Eleventh Amendment.  *See Coeur d'Alene Tribe of Idaho*, 521 U.S. at 287.

Plaintiff's reliance on *Ainscough v. Owens*, 90 P.3d 851, 858 (Colo. 2004) is entirely misplaced.  That case said nothing about sovereign immunity as a limitation on federal court jurisdiction because it was a state court action addressing standing to sue the Governor in state court.  90 P.3d 851, 852 ("The question before us is whether individual state employees and their labor organizations have standing to sue the Governor […] to challenge a 2001 Executive Order.").  The facts and law of this case are entirely different.  If, by citing *Ainscough*, Plaintiff is trying to suggest its claims are based on violations of state law, then those claims are also barred by Eleventh Amendment immunity.  *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121 (1984).  For all of the foregoing reasons, the Amended Complaint falls squarely within the Eleventh Amendment's prohibition.

Because sovereign immunity applies, Plaintiff must demonstrate that the State voluntarily waived its sovereign immunity or that Congress acted to affirmatively waive the State's immunity. *See Ramirez v. Oklahoma Department of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994). Congress may abrogate the states' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute. *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989). A general authorization for suit does not abrogate the Eleventh Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 56 (1996). The party invoking the federal court's jurisdiction bears the burden of proof. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

The Amended Complaint fails to prove voluntary waiver or affirmative abrogation for at least three reasons. First, it alleges jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1343, yet none of those statutes contain the "unmistakably clear" language necessary to abrogate the State's immunity. *See Dellmuth*, 491 at 228; *Blatchford v. Native Vill. of Noatak & Circle Vill.,* 501 U.S. 775, 786, (1991) (noting that "no one contends that § 1331 suffices to abrogate immunity for all federal questions."); U.S. CONST. amend. XI (judicial power does not extend to suits brought "*by Citizens of another State*" against one of the United States, thus preserving immunity where diversity between parties might exist under § 1332); *Salazar v. Heckler*, 787 F.2d 527, 528 (10th Cir. 1986) (§ 1343 vests district courts with original jurisdiction for civil rights violations but does not itself abrogate

immunity).  Second, Plaintiff's action is not saved by the fact that it seeks

declaratory judgment and injunctive relief, as the Eleventh Amendment expressly

applies to suits seeking declaratory and injunctive relief.  *See Cory v. White,* 457

U.S. 85, 90-91 (1982).

Third, the strictures of the Eleventh Amendment cannot be overcome by

Plaintiff's implied allegations under various other federal laws or statutes.  For

instance, the Amended Complaint alleges that dams are the leading cause of

population collapse of endangered fish species potentially raising claims under the

Endangered Species Act ("ESA").  *See* Dkt. 19 at p. 31. Yet, citizen suits under the

EPA are limited "to the extent permitted by the eleventh amendment to the

Constitution."  *See* 16 U.S.C. § 1540(g).  Accordingly, the ESA does not

unequivocally abrogate sovereign immunity; it preserves it.  *See Burnette v.*

*Carothers,* 192 F.3d 52, 57 (2d Cir. 1999) (holding citizen suit provisions containing

identical limitation to preserve immunity).[2] Because Plaintiff's Amended Complaint

fails to overcome the "immunity from suit" established under the Eleventh

Amendment, the Amended Complaint must be dismissed.

---

[2] Plaintiff also failed to obey the notice provisions of the ESA, which bar
commencement of a citizen suit without notice.  16 U.S.C. 1540(g)(2)(A).  Because no
notice was provided to the State in this case, Plaintiff's hypothetical ESA claims
would be barred even if the Eleventh Amendment did not apply.  *See Forest*
*Guardians v. U.S. Bureau of Reclamation*, 462 F. Supp. 2d 1177, 1183-1184 (D.N.M.
2006).

**II.      The ecosystem and next friends lack standing.**

Even if the Amended Complaint were not barred by the Eleventh

Amendment, the Amended Complaint fails to demonstrate that the ecosystem or

"next friends" have standing.  Standing involves two distinct inquiries.  First, an

Article III federal court must ask whether a plaintiff has suffered sufficient injury

to satisfy the "case or controversy" requirement of Article III.  *See Steel Co. v.*

*Citizens for a Better Environment*, 523 U.S. 83, 103 (1998).  Article III constitutional

standing requires three elements: (1) the plaintiff must have suffered an injury in

fact which is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical; (2) the injury has to be fairly traceable to the challenged

action of the defendant and not the result of the independent action of some third

party; and (3) it must be likely, not speculative, that the injury will be redressed by

a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

Failure to establish any one element deprives the federal Court of jurisdiction and it

must be dismissed under Rule 12(b)(1).  *Steel Co.,* 523 U.S. at 109-10.

Second, if a plaintiff has suffered sufficient injury to satisfy Article III, then a

federal court must ask whether a statute has conferred "standing" on that plaintiff

by granting it a right to sue.  *Warth v. Seldin,* 422 U.S. 490, 500, (1975).   Even if a

plaintiff satisfies the requirement of Article III, that plaintiff cannot state a claim

upon which relief can be granted if Congress has not granted statutory standing.

*See Steel Co.*, 523 U.S. at 97.  Under those circumstances, plaintiff's claims should

9

be dismissed under Rule 12(b)(6), which serves as a "judgment on the merits." *See*
*Angel v. Bullington*, 330 U.S. 183 (1947).

> ### A.     The ecosystem lacks the standing required to invoke this Court's jurisdiction.

The Amended Complaint fails to establish any one of the three elements of
constitutional standing.  First, it admits there is no legally protected interest at
issue.  It admits the "Colorado [River] has no rights or standing whatsoever to
defend itself and ensure its existence."  Dkt. 19 at pp. 18-19.  Even putting aside
that admission, it further fails to allege an actual or imminent concrete injury.
Instead, it speculates that hypothetical or potential injury might occur in the future.
*See e.g.* Dkt. 19 at p. 28 ("Actions taken by Defendant State of Colorado [...] *may*
violate those rights.") (emphasis added); Dkt. 19 at p. 33 ("[C]ertain activities [...]
*may* violate the rights of the natural communities …") (emphasis added); Dkt. 19 at
p. 31 ("The Plaintiffs are asking this Court to declare these and other actions [...]
*capable* of violating the rights of the [ecosystem]." (emphasis added).  But even then,
the Amended Complaint fails to allege *when* those potential injuries might occur.
Speculative injuries resulting from potential future actions are not imminent or
actual and are insufficient to defeat a motion to dismiss.

Second, the Amended Complaint fails to show that those speculative future
injuries could be fairly traced to any State action.  Standing cannot be based on
"injury that results from the independent action of some third party not before the
court."  *Maryland v. Louisiana*, 451 U.S. 725, 736 (1981); *see also Lujan*, 504 U.S. at

562.  None of the alleged potential future injuries listed in the Amended Complaint is fairly traceable to the State of Colorado.  For example, Count Three complains of the recent breach of the Gold King Mine, Dkt. 19 at pp. 28-29, yet the breach was not caused by the State.  In fact, the Environmental Protection Agency ("EPA") has claimed responsibility for the Gold King Mine spill,[3] and the Supreme Court of the United States denied New Mexico's attempt to sue the State over the breach.  *New Mexico v. Colorado*, 137 S. Ct. 2319 (2017).

Likewise, any injury that might result in the future from alleged "over-allotment" of water from the Colorado River cannot be fairly traceable to the State.  *Contra.* Dkt. 19 at p. 29 (alleging that "[o]ne reason the Colorado River rarely reaches the sea is the compacts and laws that regulate how much water can be diverted from the river allow humans to take more water from the river than physically exists.").  A conclusory statement about the allocation of the waters of the river fails to link injury, if any, to State actions.  Allocation of waters of the river has occurred over ninety-five years pursuant to at least two interstate compacts, an international treaty, statutes, and related court decrees, authorities-referred to as the "Law of the River."[4]  The "Law of the River" implicates Colorado along with six

---

[3] See https://www.epa.gov/goldkingmine, last visited: November 21, 2017. ("EPA takes responsibility for the Gold King Mine release and is committed to continue working hand-in-hand with the impacted local governments, states and tribes.")

[4] *See* https://www.usbr.gov/lc/region/g1000/lawofrvr.html. Last visited November 21, 2017.

other states; the Republic of Mexico; multiple Native American Tribes; the federal government; and water user, power and environmental groups throughout the southwestern United States.  The State is in compliance with the interstate water compacts and related Law of the River and the Amended Complaint cannot allege injury resulting from any violation thereof.  To the extent the Amended Complaint alleges injury resulting from speculative deficiencies in the Law of the River, such injuries are not fairly traceable to Colorado.

Similarly, whatever speculative injury might hypothetically occur in the future from operation of the dams listed in the Amended Complaint is not fairly traceable to State actions.  Although the dams are located in Colorado, none were constructed by the State, and none are owned or operated by the State.  Dkt. 19 at pp. 30-31.[5]

Third, the Amended Complaint fails to demonstrate that potential future injuries are redressable by the requested relief.  In order to establish standing under Article III, "it must be likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted).  The Amended Complaint fails that test.  The Amended Complaint alleges hypothetical

---

[5] See *e.g. https://www.usbr.gov/projects/facilities.php?state=Colorado* last visited Nov. 27, 2017; http://www.northernwater.org/WaterProjects/WaterCollection.aspx last visited Nov. 27, 2017.

future injuries, but asks this Court to declare that the ecosystem "is a 'person' capable of possessing rights...." Dkt. 19 at p. 32.  There is no suggestion—even a speculative one—that declaring the ecosystem a "person" would redress the alleged injuries.  Thus, the Amended Complaint fails to demonstrate redressability.

### B.   The ecosystem does not have statutory standing and cannot state a claim for relief.

Even if the claims were not barred by sovereign immunity and the Amended Complaint could meet the burden of Article III standing, the ecosystem itself does not have statutory standing to bring such claims.  As such, the Amended Complaint fails to state a claim upon which relief can be granted.  *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (holding that aquatic mammals do not have statutory standing to sue absent express authorization by Congress).

The Amended Complaint fails to directly cite any statute conferring standing on the ecosystem.   Moreover, as noted above, the Amended Complaint merely implies that violations might occur under ESA.  Dkt. 19 at p. 31 (alleging dams are the leading cause of population collapses of endangered fish species).  Setting aside Plaintiff's failure to allege an injury in fact, the ESA does not authorize suits by an ecosystem:  the ESA allows a "person," to sue in federal district court to enforce the duties the statute prescribes. *See* 16 U.S.C. § 1532(13).  The term "person" includes "an individual, corporation, partnership, trust, association, or another private entity; or any officer, employee, agent, department, or instrumentality of the Federal Government, or any State, municipality, or political subdivision of a State,

or of any foreign government; any State, municipality, or political subdivision of a State; or any other entity subject to the jurisdiction of the United States." *Id.* "Person" does not, however, include animals and thus does not grant standing to animals to sue in their own names to protect themselves. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (holding "[t]here is no hint in the definition of "person" … that the "person" authorized to bring suit to protect an endangered or threatened species can be an animal that is itself endangered or threatened.). Similarly, there is no hint that "person" includes objects, like the soil, water, and plants that, together with animals, create an ecosystem.

Nor does the ecosystem have statutory standing under the Law of the River. The Amended Complaint alleges that the Colorado River rarely reaches the sea because interstate compacts have over-allocated its supplies. Dkt. 19 at pp. 29-30. The ecosystem cannot challenge those interstate compacts in this litigation. Interstate compacts do not confer statutory standing on the ecosystem. Disputes over injuries arising under interstate compacts are generally reserved to the states, "each acting as a quasi-sovereign and representative of the interests and rights of her people in a controversy with the other." *See Wyoming v. Colorado*, 286 U.S. 494, 508-09 (1932); *also* 28 U.S.C. §1251(a) (reserving interstate water disputes to the "original and exclusive jurisdiction" of the Supreme Court.). Because no environmental statute or other law authorizes the ecosystem to bring a suit on its own behalf, the Amended Complaint should be dismissed under Rule 12(b)(6).

14

### D. The "next friends" are not parties and lack standing on their own or as third-parties.

As "next friends," Deep Green Resistance ("DGR") (no address provided), Southwest Coalition (no address provided) and the named members are not parties to the case. *See Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990) (A "next friend" does not himself become a party […] but simply pursues the cause on behalf of […] the real party in interest); *also Morgan v. Potter*, 157 U.S. 195, 198 (1895) (Named plaintiff, and not the next friend, is the real and proper party). The "next friends," therefore, have no role in establishing jurisdiction in this case.

Even if the "next friends" were plaintiffs, they do not have standing, either on their own or to assert the rights of another third party. "Next friends" do not have standing on their own because, as explained above, the Amended Complaint fails to demonstrate an injury in fact. Moreover, as also explained above, the alleged hypothetical injuries are neither traceable to any action of the State, nor redressable by a declaration that the ecosystem is a person.

Because the "next friends" lack standing in their own right, they also lack standing as third parties to assert the rights of the ecosystem (assuming *arguendo* the ecosystem has rights to defend). Although courts have recognized very limited instances in which "it is necessary to grant a third party standing to assert the rights of another," the third party must first establish its own standing under Article III. *See Kowalski v. Tesmer*, 543 U.S. 125, 129, (2004) ("[W]e shall assume the attorneys have satisfied Article III and address the alternative threshold

question whether they have standing to raise the rights of others."). The lack of Article III standing forecloses the ability of the "next friends" to credibly demonstrate standing on behalf of the Plaintiff in this case.

## III.   No Other Federal Statutes Establish Jurisdiction.

In addition to federal question jurisdiction under §1331, which does not exist for the reasons above, the Amended Complaint alleges the Court has jurisdiction under §§1332, 1343, 2201, and 2202. None, however, establishes the jurisdiction of this Court.

Diversity jurisdiction under § 1332 does not exist. Section 1332 requires complete diversity between parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996). Much of the ecosystem is located within Colorado, Dkt. 19 at p. 4, as are several of the named next friends, Dkt. 19 at pp. 10, 12. Furthermore, diversity jurisdiction cannot exist where a state is a party because a state is not a 'citizen.' *See Moor v. Alameda Cty.*, 411 U.S. 693 (1973) (holding "[t]here is no question that a State is not a 'citizen' for purposes of [...] diversity jurisdiction.").

Jurisdiction also does not exist under § 1343. Section 1343 does not itself confer jurisdiction. *Diehl v. Vill. of Antwerp*, 964 F. Supp. 646, 649 (N.D.N.Y.), aff'd, 131 F.3d 130 (2d Cir. 1997). Instead, it provides federal jurisdiction only for specific, enumerated, complaints of civil rights violations. *See e.g.* §1343(a). To invoke the Court's jurisdiction under § 1343, a complaint must allege violation of a particular statute and the civil rights implicated. *Diehl*, 964 F. Supp. at 649. The

Amended Complaint fails this test.  It neither invokes a civil rights statute, nor

identifies any civil right of the ecosystem that it alleges has been violated.

Similarly, jurisdiction does not exist under the Declaratory Judgment Act, 28

U.S.C. §§2201—2202.  The Declaratory Judgment Act does not establish jurisdiction

in the absence of an actual case or controversy.  *MedImmune, Inc. v. Genentech,*

*Inc.,* 549 U.S. 118, 138 (2007) (holding "[t]he Declaratory Judgment Act did not (and

could not) alter the constitutional definition of 'case or controversy' or relax Article

III's command that an actual case or controversy exist before federal courts may

adjudicate a question.").  Because the Amended Complaint fails to demonstrate an

actual case or controversy, as explained above, this Court cannot adjudicate the

case under the Declaratory Judgment Act.

## IV.   Plaintiff's reliance on the Fifth and Fourteenth Amendments is misplaced.

The Amended Complaint includes new claims regarding the Fifth and

Fourteenth Amendments to the Constitution.  Dkt. 19 at p. 23.  Yet, those claims

are based on rhetoric, not law.  Neither the Fifth nor the Fourteenth Amendment to

the Constitution applies.  The Fifth Amendment protects against deprivation of due

process by the federal government and is therefore inapposite in this case.  *See e.g.*

*Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 461 (1952).

The Fourteenth Amendment applies due process to the states. *See e.g., Moose*

*Lodge No. 107 v. Irvis,* 407 U.S. 163, 172-73 (1972). It is based on "the right to be

free of state intrusions into realms of personal privacy and bodily security through

means so brutal, demeaning, and harmful as literally to shock the conscience of a court." *Rochin v. California,* 342 U.S. 165, 172-173 (1952).  This is an extreme assertion against Defendants and is entirely inappropriate in this case. None of the requisite elements exist, and importantly, none have been alleged. First, no law declares the ecosystem possesses "personal privacy" or "bodily security." Second, the Amended Complaint fails to allege the requisite intent to harm. *County of Sacramento v. Lewis,* 523 U.S. 833, 854 (1998). Defendants' faithful adherence to existing law constitutes conduct that is the exact opposite of brutal, demeaning, or conscience-shocking.  The speculative future harms alleged in the Amended Complaint also fail that test.  *See e.g.* Dkt. 19 at p. 33. Moreover, the Amended Complaint further fails to illustrate any intentional conduct taken by Defendants for the purposes of harming the ecosystem.  Because neither the Fifth nor the Fourteenth Amendments provides a basis for filing a suit on behalf of the ecosystem, the Amended Complaint should be dismissed under Rule 12(b)(6).

## V.     The Plaintiff Raises a Non-Justiciable Issue.

Even if Plaintiff could overcome the State's immunity from suit or the lack of constitutional or statutory standing, Plaintiff's claims are precluded because the Amended Complaint raises a non-justiciable political question.  The Amended Complaint requests this Court to make sweeping declarations that would fashion new law out of whole cloth.  It asks the Court, rather than Congress or the Executive Branch, to declare that the ecosystem is a "person" whose rights—

whatever they might be—can be defended in court by self-declared representatives. Such a declaration has the potential to alter the fabric of American domestic and foreign policy, and flies in the face of the entire framework for addressing such concerns.

Courts are without jurisdiction to hear such political questions, *Baker v. Carr*, 369 U.S. 186, 198 (1962). A political question exists where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department or a lack of judicially discoverable and manageable standards for resolving it. *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 132 (2012).

The responsibility for making laws to define the ecosystem as a person with rights clearly rests not with the courts, but rather with Congress[6]. U.S. Const. Art II; *see Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) ("If Congress and the President intended to take the extraordinary step of authorizing animals as

---

[6] Courts in the United States exist as a mandate under the U.S. Constitution to adjudicate differences about how laws are to be enacted (legislature), administered (executive) and interpreted (judicial). U.S. CONST. art. III § 2; *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 847 (1986). Moreover, Congress' authority to enact laws is defined by the boundaries of the Constitution. U.S. CONST. art. I § 18; *See Polish Nat. Alliance of U.S. v. N.L.R.B.,* 322 U.S. 643, 649 (1944). To obtain the declaration that the Amended Complaint seeks, there has to be a readily cognizable right within the Constitution itself or by a valid law proclaimed by Congress. *See Spielman v. Hildebrand,* 873 F.2d 1377, 1386 (10th Cir.1989). Our current legal system provides neither for the declaration and relief sought in the Amended Complaint, and it is not within the purview of the courts to change that.

well as people and legal entities to sue, they could, and should, have said so plainly.") (citations omitted).

Contrary to the Amended Complaint's assertion, *Citizens United v. Federal Election Commission,* 558 U.S. 310 (2010), or *Burwell v. Hobby Lobby Stores, Inc.,* 134 S. Ct. 2751 (2014), fail to provide instructive analogies in this case. The holding in *Citizens United* relied upon other cases considering whether restricting the speech of associations and corporations infringes on individual members' rights of association under the 14th Amendment. 558 U.S. 310, 365 (2010). The Court, thus, interpreted existing rights of individual members and considered whether restricting the rights of associations and corporations would infringe those existing rights. In *Burwell* the Court relied on provisions in the Religious Freedom Restoration Act to interpret what constituted a "person" and therefore found it unnecessary to reach the First Amendment Claims. *Burwell* at 2785; 42 U.S.C.A. § 2000bb *et. seq*. Both decisions are distinguishable from this case where the Amended Complaint asks this Court to declare new rights on behalf of the ecosystem.

## **CONCLUSION**

For the reasons stated above, the Amended Complaint and all its counts should be dismissed under Rules 12(b)(1) and 12(b)(6).

Respectfully submitted on this 1st day of December, 2017.

CYNTHIA H. COFFMAN
Attorney General

FREDERICK R. YARGER
Solicitor General

*/s/ Scott Steinbrecher*
Karen Kwon
First Assistant Attorney General
Scott Steinbrecher*
Senior Assistant Attorney General
Lain Leoniak*
Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, Colorado 80203
Tel: (720) 508-6000, Fax: (720) 508-6039
Karen.kwon@coag.gov
Scott.steinbrecher@coag.gov
Lain.leoniak@coag.gov

*Counsel for Defendant State of Colorad*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2017, I electronically filed the foregoing DEFENDANT STATE OF COLORADO'S MOTION TO DISMISS using the court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Nan Edwards*
Nan Edwards